## Price *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Branches—Location—Discretion of directors—Review by courts.*
The courts have no power to review the discretion of the directors of a railroad company exercised in good faith in locating a branch railroad.

Argued Feb. 10, 1904.   Appeal, No. 251, Jan. T., 1903, by defendant, from decree of C. P. Chester Co., No. 415, in equity,

awarding a preliminary injunction in case of Joseph Price v,
Pennsylvania Railroad Company. Before MITCHELL, C. J.,
DEAN, FELL, MESTREZAT and THOMPSON, JJ. Reversed.

Bill in equity for an injunction.

HEMPHILL, P. J., found the facts to be as follows :

On March 18, 1903, at a meeting of the board of directors
of defendant company, the following resolution was adopted :

" Resolved, that the president and board of directors of this
company deem it advantageous and suited to promote the
convenience of the inhabitants of Chester county and the in-
terests of this company, that a low-grade branch line be con-
structed from a point on the main line of its railroad at or near
Paoli, in the county of Chester, and running in a westerly di-
rection through the said county to a proposed connection with
the said main line at or near Thorndale, in the said county, a
distance of about fifteen miles, more or less, and that the loca-
tion of said branch, as represented on the plan this day sub-
mitted to the board, marked ' No. 8331—new freight line Paoli
to Thorndale, Philadelphia Div., P. R. R.,' is hereby approved,
subject to such modifications as the president may deem ad-
vantageous, and that the proper officers are hereby authorized
to acquire by purchase or condemnation the necessary right of
way, and to construct the whole or any part of said branch at
such time or times as in the judgment of the president may be
for the best interests of this company."

In compliance with this resolution, the said company has laid
out and commenced the construction of a new line of railway
between the points named, which, in substance, is thus de-
scribed by its assistant engineer of construction in charge of the
work :

The new line branches away from the main line at or near
Paoli Station, and runs practically parallel with the present
tracks and on the north side to Whitford, where it crosses the
present tracks at an elevation of about twenty-five feet above,
to the south side, a distance of about eight miles.   The distance
between the new and main lines, on this stretch, varies from
nothing to two hundred feet.   After crossing at Whitford, the
new line continues south of the main line until Thorndale is
reached, when they again unite.   The distance between the

lines, on this stretch, varies from nothing to two thousand feet at Downingtown, where the new line has an elevation above the surface of the ground of one hundred and twenty-five feet and above the tracks of the main line of about sixty-five feet. At Parkesburg, west of Thorndale, the new line again leaves the main line and runs west to Marysville, a total distance approximately of one hundred miles. The width of the roadway is thirty-two feet and is intended to carry two tracks. Through the plaintiff's property the base of the line at the widest point is two hundred and ten feet and its elevation above the surface of the ground is fifty feet.

It is to be a low grade road, used exclusively for freight, and without stations.

The road is thus described by the board of directors of the defendant company in their fifty-sixth annual report, made to the stockholders on March 10, 1903:

"Sixth.—The building, in connection with the four-tracking of the Northern Central Railway, between the new Fairview yard and York Haven, of a new double-track, low-grade railroad, about ninety-five miles in length from the latter point, via Columbia to Philadelphia. This line will cross the Susquehanna River by a stone-arched bridge near Shock's, will utilize five miles of your Columbia and Port Deposit Railroad, from Columbia to Creswell, where the new line leaves the Susquehanna to enter the valley of the Pequea, will run thence to your main line at Parkesburg, which it will follow from Parkesburg to Thorndale, and parallel it from Thorndale to Paoli, while the main line between Paoli and Philadelphia will be six-tracked."

The court awarded a preliminary injunction.

*Error assigned* was the decree of the court.

*John G. Johnson*, with him *John J. Pinkerton*, for appellant.—We submit that the sole prerequisite condition to the construction is the determination by the president and directors of the railroad company proposing to construct, that they deem such construction " advantageous and suited to promote the convenience of the inhabitants " (of the county through which the road will run) "and the interests of said company: " Rudolph

v. Pennsylvania Schuylkill Valley R. R. Co., 166 Pa. 430; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459.

This court has never sustained any interference with the exercise of the discretion of the board of directors authorized to locate and construct a railroad, because of the opinion of any one that the location could be dispensed with or that a better one could be adopted: Getz's App., 10 W. N. C. 453; McAboy's App., 107 Pa. 548; Volmer's App., 115 Pa. 166; Parke's Appeal, 64 Pa. 137; New York & Erie R. R. Co. v. Young, 33 Pa. 175; Anspach v. Mahanoy & Broad Mountain R. R. Co., 5 Phila. 491.

*Edward A. Magill*, of *Alexander & Magill*, with him *Thomas W. Pierce* for appellee.—Branching is not an incidental power: Com. v. Erie & Northeast R. R. Co., 27 Pa. 351; P. W. & B. R. R. Co v. P. & R. R. R. Co., 1 Pa. Dist. Rep. 73; Penna. R. R. Co.'s App. 115 Pa. 514; Pittsburg v. Penna. R. R. Co., 48 Pa. 355; Black v. P. & R. R. R. Co., 58 Pa. 249; French v. P. & R. R. R. Co., 13 Phila. 189; Getz's App., 10 W. N. C. 453.

While the delegation of the right of eminent domain rests with the legislature, and while the degree of the public necessity for the exercise of that right is for their ascertainment, yet the courts of this and every other state uniformly hold that the question whether a particular use is public or not is ultimately and necessarily a question for the courts, and this because of the fundamental law of the land that private property can be taken only for a public use and the meaning of a public use involving the interpretation of constitutional provisions is exclusively within the province of the judiciary: Edgewood v. R. R. Co.'s App., 79 Pa. 257; McCandless's App., 70 Pa. 210; Pittsburg v. Scott, 1 Pa. 309; Smedley v. Erwin, 51 Pa. 445.

Whenever the extent of the right of eminent domain is not specifically defined and limited by law, the question as to the necessary and proper exercise of that right by the corporation invested therewith is one which must ultimately be determined by the courts, and not by the corporation itself: Penna. R. R. Co.'s App., 93 Pa. 150; Pittsburg Junction R. R. Co.'s App., 122 Pa. 511; Penna. R. R. Co.'s App., 128 Pa. 509.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 2, 1904 :

By its act of incorporation the appellant company is authorized " to make such lateral railroads or branches leading from the main line of their said railroad to such convenient place or points in either of the counties into or through which the said main line of their road may pass, as the president and directors may deem advantageous and suited to promote the convenience of the inhabitants thereof and the interests of said company."

On March 18, 1903, the company passed a résolution, " That the president and board of directors of this company deem it advantageous and suited to promote the convenience of the inhabitants of Chester county and the interests of this company, that a low-grade branch line be constructed from a point on the main line of its railroad at or near Paoli, in the county of Chester, and running in a western direction through the said county to a proposed connection with the said main line at or near Thorndale, in the said county," etc.

- In September, 1903, the board passed an additional resolution that the improvement in question " which, in the opinion of the board is necessary for the better securing the safety of persons and property and increasing the facilities and capacity for the transportation of traffic on this company's railroad, is intended and designed as a means of affording necessary transportation facilities in connection with, and in addition to, the company's existing line of railroad."

On a bill filed by a property owner through whose land the proposed extension was to run, the court issued the injunction from which we have this appeal.

The grounds of its action are clearly expressed in the following extract from the opinion of the learned court below :

" That it would be ' a branch ' may be conceded, for our courts have held the extension of a main line or the construction of a road from any part of the main line to be a branch, and that it may even be longer than the main line itself. But the act of 1846 does not confer upon the company unlimited branching powers, or authorize it to construct branches wherever or for whatsoever purposes it sees fit, but only ' to such convenient place or points in either of the counties into or through which the said main line of their road may pass, as

the president and directors may deem advantageous and suited to promote the convenience of the inhabitants thereof, and the interests of said company.'

" Now, the purpose for which this branching power is conferred, aside from that of benefiting the company, is of a public character, viz., to develop the county in which it is built and 'promote the convenience of its inhabitants' by giving them better railroad facilities for the transportation of their persons and products.

" To what 'convenient place or points' in the county of Chester would the proposed road lead?

" The answer must be, to none, for it enters the county from the east on the roadway of the main line and continues thereon until Paoli is reached, where it diverges a short distance to the north, that it may secure a better grade than the main line affords, runs parallel thereto until Whitford is reached, where it crosses the main line and diverges a short distance to the south, and again runs parallel with the main line until Thorndale is reached, where it again enters upon and uses the roadway of the main line to Parkesburg, where it again diverges and shortly enters the county of Lancaster, leading to no 'place or points' in the county of Chester, and establishing no stations therein.

" How can such a line of railroad be said to promote the convenience of the inhabitants of Chester county?"

By the opinion it appears that the court differed with the board of directors as to the promotion of the convenience of the inhabitants of the county by the proposed branch road, that it held that the burden of proof was on the defendant to show such convenience, and that no sufficient proof to that effect had been presented.

This view unfortunately overlooks the fact that the decision as to the convenience, etc., is vested by the statute in the board of directors, and not in the court. A difference of opinion or judgment on the facts in this regard is altogether immaterial. The decision of the board is not reviewable by the court, except so far as to see that it is in good faith an exercise of the branching power conferred by the charter. Unless it is clearly ultra vires in that respect, the court has no authority to interfere. The language of the statute is too plain to admit of

any other construction, "to make such lateral railroads or branches . . . . as the president and directors may deem advantageous and suited to promote the convenience of the inhabitants thereof, and the interests of said company."

If an inquiry into the merits were permissible, it might well be suggested that although the route, grade, etc., do not appear to be such as to afford any additional conveniences in the way of stations or points of connection for the inhabitants, yet their convenience might be greatly promoted as indicated in the supplementary resolution of September, 1903, by the additional facilities of freight transportation on a "low grade branch" thereby relieving congestion on the main line and opening opportunity for more or better passenger service. But as already said, this is not a matter with which the courts have anything to do. The discretion of the president and directors if exercised in good faith within the limits of the charter rights, is conclusive.

Decree reversed and bill directed to be dismissed.