Jury et al., Appellants, *v.* Wiest et al., Appellants.

Argued May 17, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*J. A. Welsh* and *W. H. R. Unger,* with them *W. H. Unger* and *F. F. Reamer,* for appellants.

*Charles C. Lark* and *Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul,* with them *Charles E. Berger, W. Irvine Wiest, Hiram J. Bloom, J. Fred Schaffer, Russel S. Machmer* and *Helen J. Schaffer,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 25, 1937:

This is a bill to enjoin the purchase by the School District of Shamokin Borough of certain properties from the defendants. On February 2, 1925, and January 27, 1927, the directors decided to increase certain school and playground facilities; resolutions were passed that the properties "be hereby appropriated and condemned . . ." and the school directors "shall enter upon, take possession of and occupy the said lots or pieces of ground for school purposes." On August 13, 1927, agreements were executed between the school district and the property owners fixing the value of the properties at $87,000, and providing that deeds conveying title to the properties be placed in escrow conditioned upon the payment of the sums fixed within six months after demand for payment by the grantors, but demand could not be made before August 1, 1930. The grantors were permitted to retain possession without rental charge prior to payment; and no interest was to be paid on the sums until six months after demand was properly made. The school district was to pay all taxes and insurance. The deeds were executed and placed in escrow, and on August 2, 1930, defendants, William and Maude A. Helfenstein,

notified the school district that they desired payment on February 2, 1931. No provision for payment was made by the school district, and, the school directors, having changed, procured taxpayers to file this bill to restrain the board from making the payments. It was contended that no obligation was created as the contemplated payments increased the total indebtedness beyond the constitutional limitations.

The Chancellor found no condemnation had been effected, since no steps had been taken by the school district to physically mark or enter upon the properties as required by the Act of May 18, 1911, P. L. 309, Sec. 605,[1] but that a contract to purchase had been executed on August 13, 1927, at which time the indebtedness to be incurred exceeded the constitutional limitation. The court en banc concurred in the holding as to condemnation and purchase but reversed the chancellor on the theory that the money that could have been collected from unused millage,[2] coupled with the borrowing capacity remaining within the 2% constitutional limit, was large enough to pay the valuations fixed for the properties. It held that as it was the past practice of the school district to pay for property acquisitions out of new revenues, and three years were allowed before payment had to be made, this potential revenue was not

---

[1] "Whenever the board of school directors of any district cannot agree on the terms of its purchase with the owner or owners of any real estate that said board has selected for school purposes, such board of school directors, after having decided upon the amount and location thereof, may enter upon, take possession of, and occupy such land as it may have selected for school purposes, and designate and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of this act."

[2] "The school funds which may be raised by taxation in any school district shall be pledged, and hereby are made security, to the owner or owners of any property taken for school purposes, for all damages they may sustain on account of the taking of such property by the district for school purposes (1911, May 18, P. L. 309, art. VI, Sec. 606)."

only security for but was to be used to pay for the properties. The bill was dismissed.

The court below was in error in holding there was no effective condemnation of the properties. In obedience to Article I, Section 10 of the Constitution no private property may be taken for public use without just compensation to the owner. With municipalities and other political subdivisions this must be through condemnation proceedings, otherwise the authorities become trespassers. The Act of May 18, 1911, P. L. 309, Section 605, gives school directors the power, where they cannot agree on terms of purchase with an owner of real estate selected for school purposes, to enter upon the property, designate its boundary, and "thereafter" use it for school purposes. Resolutions effecting condemnation could not be passed until there had been a failure to agree. The resolutions presuppose such inability to agree, and the regularity of the proceedings will not be inquired into when the condemnation resolutions are, as here, placed on the minutes, unless there is an affirmative showing that the minutes had no basis in fact, or were fraudulent. See *Erie City v. Piece of Land,* 308 Pa. 454, 458; *Falkinburg v. Venango Township,* 297 Pa. 358; *Young v. Red Fork Levee Dist.,* 124 Ark. 61, 186 S. W. 604. The condemnation resolutions of February 2, 1925, and January 27, 1927, must be considered to have followed unsuccessful negotiations with the owners.

It is not necessary that the school directors take physical possession of the land. They did a series of acts which evidenced entry, possession and occupancy. They entered into the agreement of August 13, 1927; caused a survey to be made; and paid taxes and insurance as owners. The owners deposited deeds in escrow, as a result of which their power to sell to others was terminated; and while they remained in possession, they did so as lessees of the school district. The provisions of the School Code governing condemnation proceedings

were complied with by these acts. Where all the land of the owner is taken it is not necessary, in addition to a survey, to mark it; where only a portion of the land is taken the provision of the act requiring the boundaries to be designated applies.

The condemnation was not rendered ineffective because the property owners voluntarily coöperated in fixing the value of the properties condemned, making arrangements for payment and giving the school district a deed. The intent of the directors as evidenced by the resolutions of condemnation was to take the property regardless of the owners' consent. When a corporation, municipality or other governmental body having the power of eminent domain passes resolutions condemning land and effects a taking of it, the validity of this condemnation procedure is not impaired by a subsequent settlement and acceptance of a deed to the property from its owners, but such deed is rather in furtherance of the condemnation proceedings: *Boalsburg Water Co. v. State College Water Co.*, 240 Pa. 198; *Pennsylvania R. R. v. Sagamore Coal Co.*, 281 Pa. 233; *Palmer Water Co. v. Lehighton Water S. Co.*, 280 Pa. 492, 505.

The condemnation was completed under the original resolutions; the agreement of August 13, 1927, settled the amount and terms of payment. The school district could not thereafter recede from it: *Peters v. Reading*, 321 Pa. 220; *Reinbold v. Commonwealth*, 319 Pa. 33; *Philadelphia v. Commonwealth*, 284 Pa. 225, 234; *Dilts v. Plumville R. R. Co.*, 222 Pa. 516. Section 606 of the School Code provides that where a school district acquires property by condemnation "the school funds which may be raised by taxation shall be pledged and hereby are made security" for damages caused to the owners of the property as a result of the taking. The appellees were entitled to compensation thereunder. This section causes the proceeds of the unused portion of the available millage to become an asset in calculating the extent to which the indebtedness of a school dis-

trict may be increased, and it also makes that fund security for the price to be paid. The financial situation of the district at the time of the condemnation made it imperative for the school directors to levy the unused millage to pay the amount fixed as damages caused by the condemnation of the properties, as they had done in similar situations in the past. The neglect of the school district to do this did not render the property owners' claim void as being a debt in excess of the school district's borrowing capacity. Under the agreement they waived their right to prepayment in cash, but their resort should none the less be to the source provided by law for their reimbursement. The duty laid upon the school district was the levy and collection of increased taxes; failure to do so cannot have the effect of depriving the respondent property owners of the right to secure payment for their land and to compel a tax levy for that purpose; if the latter step is taken, sufficient revenue will be realized to pay the $87,000, without increasing the indebtedness of the school district beyond the constitutional limit.

The question whether the properties were needed for school purposes or fitted for such use is not for us; it is an administrative matter, and in absence of fraud the action of the school directors condemning the properties is conclusive on us.

Decree affirmed at appellants' cost.