607 A.2d 311

**Fred FLEET, II and Delcina Fleet, his wife, as joint tenants with right of survivorship and not as tenants in common and Mark W. Miller, Appellants,**

**v.**

**REDEVELOPMENT AUTHORITY OF the COUNTY OF WASHINGTON, Appellee.**

**Mark W. MILLER, Appellant,**

**v.**

**REDEVELOPMENT AUTHORITY OF the COUNTY OF WASHINGTON, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1992.

Decided April 9, 1992.

Sanford S. Finder, for appellants.

Frank A. Conte, for appellee.

Before DOYLE and KELLEY, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

Fred Fleet and Mark W. Miller (collectively referred to as Landowners) appeal an order[1] of the Court of Common Pleas of Washington County which denied preliminary objections to declarations of taking filed by the Redevelopment Authority of Washington County (Authority).

On September 7, 1989, the Washington County Planning Commission determined that a section of Weirich Avenue in Canton Township, Washington County, was blighted and approved a proposal of the Authority to redevelop that area. This plan, known as the Weirich Avenue Redevelopment Area, contained sixteen parcels of land, thirteen of which contained structures. The Authority authorized the condemnation and declarations of taking were filed with regard to these parcels, including those of the Landowners.

---

**1.** The Landowners, Fleet and Miller, each filed a separate appeal from the trial court's order. These appeals have been consolidated for disposition by this Court.

The Landowners filed preliminary objections to the declarations of taking asserting that the Authority had exercised its power of eminent domain for the sole purpose of aiding a private corporation, the Drakenfeld Corporation, to expand its facilities adjacent to the Weirich Avenue Redevelopment Area. After a hearing on the preliminary objections, the trial court found as fact that Drakenfeld had indeed been interested in the acquisition of this property for the expansion of its facility and had so advised the Authority during 1988 and 1989. Further, the trial court found that, prior to the commencement of the redevelopment, the Authority actively pursued the potential for Drakenfeld to acquire the Weirich Avenue project, and there was considerable correspondence between Drakenfeld and the Authority before the properties were condemned. The trial court also made the critical finding that Weirich Avenue Redevelopment area met the criterion for designation as a blighted area.[2]

The trial court, however, concluded that the Authority condemned the land for a public purpose and opined:

[W]hile certainly the redevelopment authority believed Drakenfeld would be a viable prospect for the purchase of the land, and even assumed that they would eventually purchase the land, this does not, in and of itself, render the taking private. The area certified as blighted met the requirements of the law, the appropriate procedures were followed in certifying the area despite the fact that all involved assumed that Drakenfeld would logically purchase the redeveloped area, there is no formal agreement to do so, nor is there any indication that some undue influence or bad faith was exercised in insuring that that will occur.

Accordingly, the trial court denied the Landowners' preliminary objections and this appeal followed. On appeal the Landowners contend that their land was improperly condemned by the Authority and was condemned solely for the

2. The Landowners conceded during a hearing below that the Weirich Avenue area could pass the test as a blighted neighborhood under Section 2(a) of the Urban Redevelopment Law (Law), Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. § 1702(a).

purpose of benefiting the Drakenfeld Corporation, a private and not a public purpose.

Our analysis must begin with recognizing that public officials are presumed to act lawfully and in good faith. *City of Philadelphia Appeal*, 40 Pa.Commonwealth Ct. 409, 398 A.2d 224 (1979). Where the right of eminent domain is vested in a municipality, administrative body, or even a private corporation, the question as to whether the circumstances justify the exercise of the power in a specific instance is not a judicial one, at least in the absence of fraud or palpable bad faith. *Schenck v. Pittsburgh*, 364 Pa. 31, 70 A.2d 612 (1950). Because of the nature of the Landowners' contention, that the Authority decided to condemn their land solely for the benefit of Drakenfeld, the question at the core of this appeal is whether the Authority exercised its eminent domain power in "palpable bad faith."

In *Redevelopment Authority of the City of Erie v. Owners*, 1 Pa.Commonwealth Ct. 378, 274 A.2d 244 (1971), we defined the term "palpable bad faith" as follows:

These words [palpable bad faith] have vital meaning when used as a limitation on the power of a governmental authority to condemn property. Bad faith is generally the opposite of good faith and ... implies a tainted motive of interest. Bad faith becomes palpable when such motive is obvious or readily perceived. The courts have the responsibility to see that an authority has not acted in bad faith, and that property be taken by eminent domain only to the extent reasonably required for the purpose for which the power is exercised.

*Id.*, 1 Pa.Commonwealth Ct. at 383, 274 A.2d at 247. A party alleging that an authority has acted in "palpable bad faith" must prove it by clear, precise, and indubitable evidence. *City of Philadelphia Appeal.*

In *Erie*, the Redevelopment Authority of Erie improperly condemned a tract of land for the exclusive purpose of selling it to an individual, Achilles Pulakos. Pulakos owned a candy store which was condemned by the Redevelopment

Authority in order to construct a hotel. Pulakos fought the taking of his property which resulted ultimately in a deal being made surreptitiously with the Authority to sell him another parcel of property owned by the appellants, for the purpose of relocating his candy store. The appellant's property was also condemned as part of the hotel project. This entire arrangement was agreed upon prior to the Authority filing its declaration of taking.

The record in *Erie* clearly revealed that the property in question was taken for the benefit of Pulakos; the Court stated:

> The Authority *conceded* that appellants' property, after demolition of the building, would be conveyed to the Pulakos['] interests who would erect a one-story candy store occupying the entire lot.... The Authority's own records show that ... action was taken to amend the Urban Renewal Plan ... to "sincerely solicit" an *exclusive* proposal from Pulakos for *the sole purpose of obtaining the property in question for the benefit of Pulakos.*

*Id.*, 1 Pa.Commonwealth Ct. at 389, 274 A.2d at 250 (emphasis added). Therefore, we concluded that the Redevelopment Authority of Erie acted in palpable bad faith when it acquired a parcel of property for the sole purpose of relocating Pulakos' private retail store.

The Landowners argue that the facts here are similar to the facts in *Erie*. They assert that the Authority had an arrangement with the Drakenfeld Corporation, prior to filing declarations of taking, to sell to Drakenfeld the Weirich Avenue properties.

■ In the present case, in contrast to *Erie*, there is no evidence that would qualify as a "smoking gun" demonstrating that the Authority acquired the Landowners property solely for the use of the Drakenfeld Corporation. The evidence here, in the form of depositions and correspondence between the Authority and Drakenfeld, shows, at most, that Drakenfeld was interested in the Landowners'

properties and communicated that interest to the Authority, and that the Authority wanted Drakenfeld to purchase the Weirich Avenue property.[3] The evidence does not demonstrate that the properties were declared blighted for the sole reason of making the land available for Drakenfeld, or that the Authority had an agreement to sell the land to Drakenfeld prior to condemning the Landowners' properties. While Drakenfeld did benefit from the Authority's decision to redevelop Weirich Avenue, the exercise of the right to eminent domain does not lose its public character because there may exist in the process some measure of private gain. *Belovsky v. Redevelopment Authority of Philadelphia*, 357 Pa. 329, 54 A.2d 277 (1947). Private interests are encouraged and expected to take over the development of the condemned blighted area. That is the whole purpose of the redevelopment plan. The record in this case does not reveal an obvious or readily perceived tainted motive behind the Authority's exercise of its eminent domain power. We therefore conclude that there is no palpable bad faith in the Authority's decision to condemn the Landowners' property.

Accordingly, the order of the trial court is affirmed.

## ORDER
### No. 1544 C.D. 1991
NOW, April 9, 1992, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed.

## ORDER
No. 1545 C.D. 1991
NOW, April 9, 1992, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed.

---

**3.** This correspondence appears to be relevant to the type of information pertinent to a business seeking to take advantage of development opportunities under the Business Infrastructure Development Act, Act of July 2, 1984, P.L. 520, *as amended,* 73 P.S. §§ 393.1–393.12.