Arlene and Joseph MERCURIO, India and Steve Loevner, Timothy J. Sullivan, Jr., Robert Silber, Melanie Pallone, Joseph Pugach, Virginia and Dr. Paul Taylor, Andrew Washburn and Kathy McCauley, Robert H. Mullen and Citizens For Pennsylvania's Future, Appellants

v.

ALLEGHENY COUNTY REDEVELOPMENT AUTHORITY, Allegheny County, Allegheny County Council, Orix–Woodmont Deer Creek I Venture, L.P., Harmar Township, Allegheny Valley School District and W. Duff McCrady.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2003.

Decided Dec. 31, 2003.

---

Jody L. Rosenberg, Pittsburgh, for appellant.

Irving S. Firman, Pittsburgh, for appellee, Redevelopment Authority of Allegheny County.

William A. Pietragallo, Pittsburgh, for appellee, Orix–Woodmont Deer Creek I Venture, L.P.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, SIMPSON, Judge, LEAVITT, Judge.

OPINION BY JUDGE McGINLEY.

Arlene and Joseph Mercurio, India and Steve Loevner, Timothy J. Sullivan, Jr., Robert Silber, Melanie Pallone, Joseph Pugach, Virginia and Dr. Paul Taylor, Andrew Washburn and Kathy McCauley, Robert H. Mullen and Citizens for Pennsylvania's Future (Citizens) (collectively, Appellants) appeal the order of the Court of Common Pleas of Allegheny County (common pleas court) that sustained the preliminary objections of Allegheny County Redevelopment Authority (ACRA), Allegheny County (County), Allegheny County Council (Council), Orix–Woodmont Deer Creek I Venture, L.P. (Orix), Harmar Township (Township), Allegheny Valley School District (District) and W. Duff McCrady (McCrady) (collectively, Appel-lees) and dismissed the Appellants' amended complaint in its entirety with prejudice.

On December 16, 1998, ACRA adopted a resolution that declared its official intent to issue obligations to finance the proposed Deer Creek Project using Tax Increment Financing (TIF) in an amount not to exceed $25,000,000. The project is a commercial development located on approximately 320 acres in the Township. By resolution dated February 17, 1999, the Board of Supervisors of the Township authorized the ACRA to pursue a TIF proposal. By resolution dated March 1, 1999, the District similarly endorsed the TIF concept for financing the Deer Creek Project and indicated its willingness to participate. By resolution dated March 18, 1999, the Board of Commissioners of Allegheny County (Commissioners) endorsed the TIF concept for financing the public infrastructure construction relating to the Deer Creek project. By resolution dated August 25, 1999, the ACRA designated 363 acres in the Township a "redevelopment area." This included 335 acres to be the location of the Deer Creek project, 24.56 acres of the Pennsylvania Turnpike, and one light industrial parcel of 2.52 acres. By resolution dated September 1, 1999, Board of Supervisors of the Township adopted and authorized participation in the Deer Creek Crossing Tax Increment Financing Plan (Plan) presented by the ACRA. By resolution dated September 7, 1999, the Board of Directors of the District similarly adopted and authorized participation in the Plan. By resolution adopted September 22, 1999, ACRA approved and adopted the Plan and submitted the Plan to Allegheny County. By resolution dated October 7, 1999, the Commissioners adopted the Plan and created the Deer Creek Crossing Tax Increment Financing District as of December 1, 1999, to continue for twenty years. By resolution dated

October 27, 1999, the ACRA authorized the issuance of bonds in an aggregate principal amount not to exceed $26,000,000.

On July 30, 1999, Orix applied to the Pennsylvania Department of Environmental Protection (DEP) for a water obstruction and encroachment permit to fill several acres of wetlands and divert Deer Creek to construct the Deer Creek Project. The Citizens and others intervened before DEP to oppose the permit request. By letter dated October 12, 2000, DEP denied the application. Orix appealed to the Environmental Hearing Board but settlement with DEP and Citizens led to the withdrawal of the appeal. Orix submitted additional information and a revised application which DEP granted on August 22, 2002.

On August 23, 2002, the Appellants filed a complaint for declaratory judgment and in equity to enjoin tax increment financing in the common pleas court. After Orix, the County, Council, and ARCA preliminarily objected, the Appellants filed an Amended Complaint. Count I alleges that the Commissioners failed to hold a public hearing in violation of Section 5(a)(5) of the Tax Increment Financing Act (Act)[1], 53 P.S. § 6930.5(a)(5), which requires the governing body of the municipality which will create the tax increment district to hold at least one public hearing on the proposed district, its boundaries, the adoption of a project plan, and the benefits to the municipality.

Count II alleges that the adoption of the Plan was arbitrary and capricious for a host of reasons.[2]

---

1. Act of July 11, 1990, P.L. 465, *as amended.*

2. Appellants allege the following in Count II of the Amended Complaint:

> 56. Defendants Redevelopment Authority, Allegheny County, Harmar Township and the Allegheny Valley School District adopted and approved the Deer Creek TIF without due deliberation, with undue haste and without adequate public exposure and contribution.
> 57. Defendants Redevelopment Authority and Allegheny County adopted and approved the Deer Creek TIF without following the procedures established by the County's guidelines and in direct contravention of the substantive standards set forth therein without reason for deviating therefrom.
> 58. Defendants Redevelopment Authority and Harmar Township adopted and approved the Deer Creek TIF although it conflicted with the major objectives of Harmar Township's Comprehensive Plan.
> 59. Defendants Redevelopment Authority and Allegheny County adopted and approved the Deer Creek TIF without evaluating the economic impacts of the proposed project on surrounding communities and nearby businesses.
> 60. The Deer Creek Project Plan indicates $11,020,680 in property acquisition costs. The County currently assesses the property

at a market value of approximately $137,000.
> 61. Defendant Redevelopment Authority used unreasonable, inaccurate and inappropriate estimates and formulas to determine the likely increases in tax revenues to be generated by the proposed Deer Creek Project.
> 62. The Redevelopment Area and the TIF District are identical. The Deer Creek Project is therefore *not* 'likely to enhance significantly the other real property in the district' as is contemplated by the TIF Act, 53 P.S. § 6930.5(A)(6)(iv)(B).
> 63. The Deer Creek TIF District is not 'blighted' under the provisions of the Urban Redevelopment Law. 35 P.S. § 1712.1(c).
> 64. The site of the Deer Creek TIF District is currently undeveloped, open space, is traversed by a perennial stream and contains approximately 9.7 acres of wetlands.
> 65. The wages provided for in the Deer Creek Project Plan are lower than the prevailing wages in Allegheny County; therefore, the project costs are underestimated.
> 66. Defendants Redevelopment Authority, Allegheny County, Harmar Township and the Allegheny Valley School District adopted and approved the Deer Creek Project without adequately considering the likely increase in the costs of police and fire protection and other public services that the proposed project will generate.

Count III alleges that the Deer Creek Project Plan in 1999 contained the following information as required in Section 5(a)(4) of the Act, 53 P.S. § 6930.5(A)(4): a statement listing the kind, number and location of all proposed public works or improvements and/or all residential, commercial or industrial development and revitalization improvements, an economic feasibility study of the project and the fiscal effects on the municipal tax base, a detailed list of estimated project costs, a description of the methods of financing all estimated project costs and the time when related costs or monetary obligations are to be incurred, and a map showing improvements and uses therein. However, the Appellants allege that Orix's revised application to DEP contain substantial changes that require a formal amendment to the Plan.[3]

67. Orix–Woodmont exerted substantial political pressure in advancing the Deer Creek Project. (Emphasis in original).

Amended Complaint, October 9, 2002, (Amended Complaint), Paragraphs 56–67 at 10–12; Reproduced Record (R.R.) at 112a–114a.

3. Count III of the Amended Complaint provides in pertinent part:

75. Some of the changes to the project documented in Orix–Woodmont's second application to the DEP indicate that information contained in the Deer Creek Project Plan is no longer accurate. These changes include, but may not be limited to the following:

a. The Deer Creek Project Plan details the expansion of Route 910 as the public infrastructure component of the project to which the TIF would be applied. According to the Deer Creek Project Plan, Route 910 would be expanded from its current two lanes to four. The current proposal would expand Route 910 to a minimum of six lanes, with as many as eight lanes at some points.

b. The new project entails a bridge and a culvert that are not part of the Deer Creek Project Plan.

c. The Deer Creek Project Plan details the commercial development improvements to consist of over 1,093,000 square feet of retail space, a 94,000 square foot multi-screen movie theatre, an entertainment complex, 120,000 square feet of office buildings, two hotels and a self-storage facility. The current plan does not include the movie theatre, an entertainment complex or a self-storage facility. The square footage of retail space has been reduced and a third hotel has been added.

. . . .

77. Other changes to the Deer Creek Project Plan result from the passage of approximately three years since its adoption. These changes include, but may not be limited to the following:

a. The Deer Creek Project Plan stated that construction was to begin in late spring 2000 and would be completed by 2003.

b. The Deer Creek Project Plan indicates that the bonds would be issued on December 15, 1999.

c. Because the TIF District is still scheduled to terminate in 2019, the calculations in the Deer Creek Project Plan projecting distributions to the various taxing bodies are inaccurate as the bonds must now pay off faster.

d. Changes in tax millage rates, property assessments and the state of the general economy affect the calculations of the tax increment and the economic feasibility and advantages of the project as well as the likely tax increment to be generated.

. . . .

79. Oral and written representations made by Orix–Woodmont, the Redevelopment Authority, and others involved in developing the Deer Creek Project's terms have indicated other substantial changes. These include, but may not be limited to the following:

a. Revenue projections in the Deer Creek Project's terms have indicated other substantial changes. These include, but may not be limited to the following:

a. Revenue projections in the Deer Creek Project Plan are based on tax revenues assuming complete construction and occupancy in 2003. Orix–Woodmont now contemplates the development in stages and sets aside some of the parcels for 'future development.'

b. Orix–Woodmont's current projections of construction costs have declined, there-

Appellants sought a declaration that the Allegheny County resolution of October 7, 1999, and the Township resolution of September 1, 1999, which created the Deer Creek TIF District and adopted the Plan are null and void, a declaration that the Plan no longer reflects the proposed Deer Creek Crossing Project and therefore does not provide the basis for applying the tax increment financing for the Deer Creek Project, a declaration that the site of the Deer Creek TIF District was not blighted, a permanent injunction that would prohibit the ACRA, Allegheny County, Council, and/or Orix from taking any action to further implement the tax increment financing pursuant to the October 7, 1999, resolution, costs of suit, and such other further relief as the common pleas court deemed proper.

Orix preliminarily objected on the basis that Count I of the Amended Complaint contained an untimely appeal from the Township's September 1, 1999, resolution and the Commissioners' October 7, 1999, resolution so the common pleas court lacked subject matter jurisdiction. Orix also preliminarily objected to Count II as an untimely appeal from the valid resolutions of local government bodies so the common pleas court lacked jurisdiction. Orix also alleges that Count III of the Amended Complaint must be dismissed for failure to state a claim upon which relief may be granted because the Act does not require that a tax increment financing plan be amended and that the Amended Complaint must be dismissed in its entirety because the Appellants lacked standing. McCrady, the owner of much of the property where the development would be located, joined these preliminary objections.

The County also preliminarily objected. The County raised some of the same preliminary objections and added that Count I is legally insufficient because there was no requirement that the members of the governing body which creates a TIF district physically preside over or actually conduct a hearing to afford interested parties an opportunity to express views on matters relating to the creation of a specific TIF District or adoption of a specific TIF plan. The County alleges that it did hold a public hearing on September 8, 1999, and that the TIF plan was approved at a Commissioners' meeting that was open to the public. The County also preliminarily objected to Count I and refutes the allegation that the Commissioners' resolution was invalid because it was not advertised. The County preliminarily objected to the allegation in Count II that the Plan is invalid because the Deer Creek TIF District is not blighted. The County reported that a determination of "blight" is not subject to judicial review absent clear averments of fraud or palpable bad faith. The Council joined these objections.[4]

The common pleas court sustained the preliminary objections and dismissed the Amended Complaint with prejudice:

fore the projected increase in assessed value resulting from the project (as it was calculated in the Project Plan) has declined, thereby reducing the amount of the tax revenues that would be available to finance the bonds.

   c. The estimated ratio of private to public investment is lower now than in the Deer Creek Project Plan.

Amended Complaint, Paragraphs 75, 77, 79 at 13–16; R.R. at 115a–118a.

4. The District preliminarily objected and in addition to the preliminary objections already raised asked that the common pleas court dismiss the Amended Complaint because of laches. The Township preliminarily objected and alleged in addition to the other preliminary objections that there was no requirement that a township act by ordinance to adopt a TIF plan, and alleged Count II was untimely. The ACRA also preliminarily objected.

Initially, Plaintiffs [Appellants] claimed that no public hearing ever occurred. Now they claim that the Board of Supervisors was required to publish the resolution by an ordinance in adopting the Tax Increment Financing Plan ("TIF"), and that failure to publicize in a newspaper of general circulation invalidates the adoption of the TIF plan, which was required by ordinance. It is uncontroverted that the TIF Plan was approved on October 7, 1999, at a Board of County Commissioners by resolution at a public meeting.

Governing bodies and districts are not required to adopt a TIF plan by ordinance. To the contrary, the TIF act provides for either an ordinance or resolution to adopt such a plan.... In addition ... a city of the second class also has the authority to act by resolution.... Furthermore, the provisions of the second class township are to be liberally construed to effect their objects in order to give effect to its provisions.... Moreover during these arguments, it was apparent that Plaintiffs [Appellants] had sufficient notice of a public hearing. Plaintiffs [Appellants] had thirty (30) days from the adoption of the resolutions to file an appeal. Notwithstanding, they waited three (3) years from the adoption to challenge the resolutions.

Plaintiffs [Appellants] contend that since procedures for the enactment were not strictly construed, they had no obligation to file an appeal within thirty (30) days after the effective date of the resolution in accordance with 42 Pa.C.S.A., Section 5571(c), and therefore were not time barred....

It is uncontroverted that Plaintiffs [Appellants] failed to file their appeal within thirty (30) days of the resolution's effective date. According to Section 5571(c) of the Pennsylvania Judicial Code, 42 Pa.C.S.A., Section 5571(c)(5), all questions relating to alleged defects in the enactment of a resolution shall be raised by appeal within (30) days of the resolution's effective date.... When a time period has been fixed by the legislature in which an appeal may be filed, that period is mandatory and may not be extended by grace or indulgence whether to an appellate court or common pleas court.... Therefore, this Court was divested of subject matter jurisdiction.

Nevertheless, Harmar had the authority to act by resolution which was properly approved and adopted by the Board of Supervisors, and properly approved thereafter by the County Board of Commissioners.... (Citations omitted).

Common Pleas Court Opinion, August 6, 2003, at 4–6.

The common pleas court also determined that there was no language in the Act that required an amendment of the Plan and that absent a determination that the legislative body did not act in good faith or acted wholly arbitrarily a certification of an area as blighted was not subject to judicial review.

The Appellants contend that the common pleas court committed an error of law when it dismissed the Amended Complaint as untimely where the resolution that was challenged never took effect, when it ruled that the Amended Complaint failed to allege sufficient facts to establish an abuse of discretion, and when it ruled that governing bodies have unbridled discretion to decide whether an adopted tax increment financing plan must be amended when the project contemplated therein was substantially changed.[5]

---

5. This Court's standard of review of an order of the trial court sustaining preliminary objections in the nature of a demurrer is limited to determining whether the trial court abused its

Initially, Appellants contend that their challenge was timely because when they initiated this lawsuit Section 5571(c)(5) of the Judicial Code, 42 Pa.C.S. § 5571(c)(5)[6], provided a thirty day time limitation for challenging defects in the enactment of ordinances and resolutions. Appellants argue that the Commissioners failed to hold a hearing as required under the Act, and, because they failed to do so, the resolution was never validly enacted.

This Court does not agree. Appellants' argument that the amended version of Section 5571(c)(5) does not apply to them fails. Section 6 of the Act of December 9, 2002, P.L. 1705, No. 215, the act that amended Section 5571(c)(5) of the Judicial Code provides that "[t]he amendment of 42 Pa.C.S. § 5571(c)(5) shall apply to an appeal or challenge relating to an alleged defect in the process of the enactment or adoption of any ordinance, resolution, map or similar action commenced after December 31, 2000." Appellants commenced this action in the common pleas court on August 23, 2002.

In *Schadler v. Zoning Hearing Board of Weisenberg Township*, 814 A.2d 1265 (Pa. Cmwlth.), *petition for allowance of appeal granted*, 574 Pa. 749, 829 A.2d 1159 (2003), this Court addressed the applicability of Section 5571(c)(5). Timothy Schadler (Schadler) owned approximately forty-one acres in Weisenberg Township (Weisenberg). Schadler filed a curative amendment and alleged that Weisenberg's zoning ordinances were invalid because they prohibited mobile home parks and imposed unreasonable restrictions for the use of his property. While this curative amendment was pending, the Weisenberg Supervisors enacted an ordinance which established standards for the design, construction, alteration, extension and operation of mobile home parks, regulated the issuance of permits for construction, alterations, and additions of/to mobile home parks, and regulated the licensing of mobile home park operators and authorized the inspection of mobile home parks and penalties for ordinance violations. *Schadler*, 814 A.2d at 1266.

discretion or committed an error of law. In ruling on preliminary objections, the court must accept as true all well pled allegations of material fact. A demurrer should be sustained only in cases that are free from doubt and only when it appears with certainty that the law permits no recovery under the allegations set forth. *Dixon v. Cameron County School District*, 802 A.2d 696, 698 n. 3 (Pa. Cmwlth.2002).

**6.** Section 5571(c)(5) of the Judicial Code, 42 Pa.C.S. § 5571(c)(5) was amended on December 9, 2002, and took effect immediately. Section 5571(c)(5) currently provides:

*Ordinances, resolutions, maps etc.*—Notwithstanding section 909.1(a)(2) of the act of July 31, 1968 (P.L. 805, No. 247) known as the Pennsylvania Municipalities Planning Code, questions relating to an alleged defect in the process of enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision, including appeals and challenges to the validity of

land use ordinances adopted pursuant to the Pennsylvania Municipalities Planning Code, shall be raised by appeal or challenge commenced within 30 days after the intended effective date of the ordinance, resolution, map or similar action. As used in this paragraph, the term 'intended effective date' means the effective date specified in the ordinance, resolution, map or similar action or, if no effective date is specified, the date 60 days after the date the ordinance, resolution, map or similar action was finally adopted but for the alleged defect in the process of enactment or adoption.

Prior to the 2002 amendment, Section 5571(c)(5) of the Judicial Code provided:

*Ordinances, resolutions, maps, etc.* Questions relating to an alleged defect in the process of enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision shall be raised by appeal commenced within 30 days after the effective date of the ordinance, resolution, map or similar action.

Schadler challenged the procedural validity of the mobile home park ordinance and alleged that the ordinance was invalid and void *ab initio* because the Weisenberg Supervisors failed to follow procedural requirements. The Zoning Hearing Board of Weisenberg Township denied the challenge because it was not timely filed, among other reasons. Schadler appealed to the Court of Common Pleas of Lehigh County which determined that the ordinance was invalid because the Weisenberg Supervisors failed to follow the requirements for publication, advertisement, and the availability of ordinances as mandated by Section 506(a) of the Pennsylvania Municipalities Planning Code[7], 53 P.S. § 10506(a). Weisenberg appealed to this Court. *Schadler*, 814 A.2d at 1266.

This Court reversed:

[T]he purpose of Section 909.1(a)(2) of the MPC and Section 5571(c)(5) of the Judicial Code is to limit the time in which a person may challenge a municipal ordinance on procedural grounds, i.e., raising procedural questions or defects in the process of enactment or adoption. However, Schadler's assertion that a municipal ordinance is rendered void *ab initio* any time defects in the process of the enactment or adoption exist and no time limits apply would render Section 909.1(a)(2) of the MPC and Section 5571(c)(5) of the Judicial Code meaningless. In effect, what the provisions do is to make all ordinances valid, no matter what the procedural defect, unless a challenge is brought within 30 days. Otherwise, challenges could be brought forever by arguing that the ordinance is void *ab initio* because of some defect in its enactment. No one then could ever rely on the ordinance with certainty because it

would always be subject to a procedural challenge. Such an interpretation results in an absurd outcome and renders Section 909.1(a)(2) of the MPC and Section 5571(c)(5) of the Judicial Code meaningless, and therefore cannot be upheld.

*Schadler*, 814 A.2d at 1270.

■ Here, Appellants commenced their challenge on the basis that the Commissioners did not comply with the Act almost three years after the County passed the October 7, 1999, resolution. Under *Schadler*, this action clearly was untimely.[8]

Appellants also allege that their challenge is not untimely because substantive defects alleged in Count II of the Amended Complaint render the resolutions that created the TIF District invalid.

■ Once again, this Court disagrees. Essentially, the Appellants disagree with, and attack the enactments by the various taxing bodies that created the TIF District. It is not within the jurisdiction of this Court to rule on the wisdom of legislative enactments. "The judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceeds along suspect lines." *Fischer v. Commonwealth Department of Public Welfare*, 85 Pa.Cmwlth. 240, 482 A.2d 1148, 1161 (1984), *affirmed*, 509 Pa. 293, 502 A.2d 114 (1985), *quoting*, *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

■ Also, with respect to Appellants' allegation that the site of the Deer Creek Crossing Project was not blighted, the common pleas court noted that our Penn-

---

**7.** Act of July 31, 1968, P.L. 805, *as amended.*

**8.** This Court need not address whether the Commissioners held a hearing.

sylvania Supreme Court has held that absent any showing that a determination of blight was made with fraud or bad faith by the governmental entity, then the determination of blight is not subject to judicial review. *Schenck v. City of Pittsburgh,* 364 Pa. 31, 70 A.2d 612 (1950). Further, the burden of proof is heavy and is not met by mere assertions. *In re Condemnations by Redevelopment Authority of the City of Lancaster,* 682 A.2d 1369 (Pa.Cmwlth. 1996), *petition for allowance of appeal denied,* 547 Pa. 758, 692 A.2d 567 (1997). In the Amended Complaint, Appellants made no specific allegation that any of the governmental entities acted fraudulently or in bad faith. This Court agrees with the common pleas court that this issue lacks merit.

Finally, Appellants contend that the Plan is invalid if it is not amended because of substantial changes in the project. Under Section 5(a)(4) of the Act, 53 P.S. § 6930.5(a)(4), a project plan must include the following:

> (i) A statement listing the kind, number and location of all proposed public works or improvements and/or all residential, commercial or industrial development and revitalization improvements.

> (ii) An economic feasibility study of the project and the fiscal effects on the municipal tax base.

> (iii) A detailed list of estimated project costs.

> (iv) A description of the methods of financing all estimated project costs and the time when related costs or monetary obligations are to be incurred.

> (v) A map showing existing uses and conditions of real property in the district.

> (vi) A map showing proposed improvements and uses therein.

> (vii) Proposed changes of any zoning ordinance, master plan, map, building code or ordinance.

> (viii) A list of estimated nonproject costs.

> (ix) A statement of a proposed method for the relocation of families, persons and businesses to be temporarily or permanently displaced from housing or commercial facilities in the project area by implementation of the plan.

In Count III of the Amended Complaint, Appellants specify changes in the project which they maintain rendered inaccurate certain aspects of the Plan. Specifically, Appellants allege that Orix was required to amend the Plan when it revised its application to DEP. Appellants argue that ACRA must amend the Plan and re-submit it to the Council as well as the Township and the District. The Township and the District must then pass ordinances or resolutions that either agree to participate in, or opt not to participate in whole or in part, in the Tax Increment District on the basis of the amended Plan. Appellants assert the Council must then hold a public hearing and either adopt or reject a resolution or ordinance that adopts the amended Plan.

In effect, Appellants assert that the whole process must start anew.

Section 5(a)(8) of the Act, 53 P.S. § 6930.5(a)(8), provides:

> The governing body of the municipality creating the tax increment district may at any time, subject to the provisions of section 6(c), adopt an amendment to a project plan which shall be subject to approval in the same manner as the original project plan.

Section 6(c) of the Act, 53 P.S. § 6930.6(c), provides:

> (c) **Amendment of plan.**—If the original project plan for any district is

amended and the amendment includes additional project costs for which tax increments may be received by the municipality, to the extent reimbursement of previously incurred costs and debt has been made as described in section 7(a)[9], the tax increment base for the district shall be redetermined pursuant to subsection (b)[10] within 90 days following the effective date of the amendment. The tax increment base, as redetermined under this subsection, is effective for the purposes of this act only if it exceeds the original tax increment base.

■■■■ The common pleas court determined that there is no language in the Act that requires an amendment. However, Appellants have alleged many detailed changes that may, if proven, amount to substantial changes. When ruling on preliminary objections, the common pleas court must accept as true all well pled allegations of material fact. *Dixon.* While the Act uses the term "may" and does not explicitly require an amendment, as the common pleas court determined, Appellants point out that such a determination may lead to a situation where a developer submits a "pie in the sky" proposal that promises the government entities that a project will generate greater increases in tax revenues. After the pro-

ject plan is approved, the developer could build a project entirely different from what was set forth in the adopted project plan. This new project could generate less tax revenues than revenues expected in the adopted project plan. Further, it is unclear whether Section 6(c) of the Act must be employed to redetermine the tax increment base. This Court reluctantly concludes that the common pleas court erred when it sustained the preliminary objections as to Count III.

Accordingly, this Court affirms in part and reverses in part. This Court affirms those parts of the common pleas court's order that sustained the preliminary objections to Count I and II of the Amended Complaint. This Court reverses that part of the common pleas court's order that sustained the preliminary objection to Count III of the Amended Complaint and remands to the common pleas court to direct the Appellees to file an answer within twenty days.

### *ORDER*

AND NOW, this 31st day of December, 2003, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed in part and reversed in part. The portions of the Court of Common Pleas of Alle-

9. Section 7(a) of the Act, 53 P.S. § 6930.7(a), provides:

(a) **Allocation of positive tax increments.—** Positive tax increments of a tax increment district shall be allocated to the issuing authority for each year from the date when the district is created until that time, after the completion of all improvements specified in the plan or amendments thereto, when the issuing authority has received aggregate tax increments of the district in an amount equal to the aggregate of all expenditures made or monetary obligations incurred for project costs for the district, including the payment of tax increment bonds or notes.

10. Section 6(b) of the Act, 53 P.S. § 6930.6(b), provides:

(b) **Determination of base.—**Upon application in writing by the finance officer of the municipality which created the district, the assessor for that municipality shall determine, according to its best judgment from all sources available to it, the full aggregate market value of the taxable property in the district as of the date on which the district was created. The finance officer of the municipality may determine the sales tax base or any other tax increment base contemplated hereby in any manner which is reasonable and prudent and meets sound business practice.

gheny County's order that sustained the preliminary objections to Count I and II of the Amended Complaint are affirmed. This Court reverses that part of the Court of Common Pleas of Allegheny County's order that sustained the preliminary objection to Count III of the Amended Complaint and dismissed the Amended Complaint in its entirety and remands to the common pleas court to direct the Appellees to file an answer within twenty days.

Jurisdiction relinquished.

Judge LEAVITT concurs in the result only.