In Re: Condemnation by City of Philadelphia of Leasehold of Airportels, Inc. City of Philadelphia, Appellant.

410

Submitted on briefs, October 30, 1978, to President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE, CRAIG and MAC-PHAIL.

*John E. Walheim,* for appellant.

*Richard D. Solo,* with him *Solo, Padova & Lisi,* for appellee.

OPINION BY JUDGE ROGERS, February 12, 1979:

The City of Philadelphia has appealed from a judgment in the amount of $4,400,000 entered against it in the Court of Common Pleas of Philadelphia County in favor of the appellee, Airportels, Inc.

On May 24, 1973, Airportels filed in the court below a petition for the appointment of viewers to ascer-

tain the just compensation due it as the result of an alleged de facto taking of its leasehold interest in a motel property located at the Philadelphia International Airport. The City failed to file a timely appeal from an order of the court below made December 28, 1973 dismissing its preliminary objections to Airportels' petition for the appointment of viewers. The City twice thereafter appealed to this Court from orders below dismissing efforts on the part of the City to circumvent the necessary result of its failure to appeal the dismissal of its preliminary objections, that result being that the City's opportunity to contest whether there had been a de facto taking was lost. In each instance we quashed the appeal. *City of Philadelphia v. Airportels, Inc.*, 14 Pa. Commonwealth Ct. 617, 322 A.2d 727 (1974), and *In re: Condemnation by the City of Philadelphia of the Leasehold Interest of Airportels, Inc.*, 21 Pa. Commonwealth Ct. 227, 344 A.2d 737 (1975). In the second of the two opinions he wrote for the court, filed in September 1975, Judge MENCER aptly described the litigation as a "dilatory procedural morass, resulting through no fault of Airportels", and expressed hope that this Court's action then taken would mark the close of the case. 21 Pa. Commonwealth Ct. at 229, 344 A.2d at 738. As appears, this was a hope not to be realized.

Airportels filed a petition in the court below tendering possession and asking for an order compelling the City to pay estimated just compensation. Because the City filed preliminary objections to this application, not until April 21, 1976 did the court below order the City to file a declaration of estimated just compensation. In response to that order, the City filed a declaration of estimated just compensation in which it stated:

On the basis of two separate independent appraisals made by qualified Real Estate Appraisers who were engaged by the City of Philadelphia to value the leasehold interest of Airportels, Inc., as of March 15, 1973. [sic] These experts have both advised the City of Philadelphia that Airportels, Inc. has suffered no damages. Therefore, the City of Philadelphia's Declaration of Estimated Just Compensation is zero.

Airportels then filed a petition in the court below alleging that the City's Declaration of Just Compensation was made and filed in bad faith and asking·for a rule on the City to show cause why the declaration should not be stricken from the record, why an impartial appraiser should not be appointed to estimate just compensation, and why judgment should not be entered in favor of Airportels on the amount of that appraisal. The rule was granted. After six days of hearing the court below ordered the rule made absolute. The City then filed its third appeal to this Court from this order. We quashed the appeal as interlocutory on Airportels' motion. The court below then appointed an impartial appraiser who reported as his estimate of just compensation for the taking of Airportels the amount $4,400,000. The court below entered judgment against the City and in favor of Airportels in that amount, plus interest from October 1, 1975 to the date of the order, January 27, 1978, as compensation for delay. The City has brought this, its fourth appeal in this case from that judgment.

The City makes an argument based on alleged abuses of discretion and prejudice in the manner in which the trial judge conducted the hearings on Airportels' petition to strike the City's Declaration of Es-

timated Just Compensation. The City's complaints under this heading are difficult to understand.

Public officials are presumed to have acted lawfully and in good faith. *Robinson v. Philadelphia,* 400 Pa. 80, 161 A.2d 1 (1960). The actions of public officials within their authority will not be set aside in the absence of proof of fraud or palpable bad faith. *Schenck v. Pittsburgh,* 364 Pa. 31, 70 A.2d 612 (1950). Bad faith implies a tainted or fraudulent motive and it is palpable when it is readily perceived. *Redevelopment Authority of the City of Erie v. Owners or Parties in Interest,* 1 Pa. Commonwealth Ct. 378, 274 A.2d 244 (1971). Hence, it is said that one relying on fraud (or its kin, bad faith) must prove it by clear, precise and indubitable evidence—that is, by credible witnesses testifying with detail to distinctly remembered facts. *Laughlin v. McConnel,* 201 Pa. Superior Ct. 180, 191 A.2d 921 (1963). To this end, Airportels adduced the testimony of one Helbig, a qualified valuation expert, that the replacement value of the improvements on the leased property was nine million dollars and that the economic rent for the property much exceeded the rent Airportels was bound to pay under its lease; the testimony of one Cutler, Airportels' president, that the cost of constructing the motel was in excess of four million dollars; the testimony of one Harrison, also a qualified valuation expert, that he had been engaged by the City to value Airportels' leasehold interest and that he had reported to the City that it was worth six and one-half million dollars; the testimony of one Sinclair, a machinery and equipment valuation expert, that he had been engaged by the City to value the machinery and equipment on the property and that this value was substantial; the testimony of one Gleason, a qualified valuation expert, that he had been engaged by the City and that he had reported to the City that

the leasehold was worth six and one-half million dollars in 1970; and the testimony of one Beck, a qualified valuation expert, that he also had been engaged by the City to appraise the leasehold interest in 1974 and that he reported that the leasehold had substantial value. The City called in its case Mr. Harry Belinger who testified under cross-examination that as Director of Commerce and City Representative of Philadelphia he was responsible for the construction and operation of the Philadelphia International Airport, that he had approved the engagement of Beck to make an appraisal of Airportels' leasehold in 1974, that Beck's appraisal of the leasehold was in the amount of $5,250,000 and that although the property is a valuable one he had participated in the decision to file a Declaration of Estimated Just Compensation in zero amount because "the court notwithstanding I believe nothing was taken."

The City's case consisted of the testimony of two witnesses, one of them Mr. Belinger, whose testimony on direct examination was to the effect that the City had not "shopped around" for appraisers who would estimate that the leasehold had no value. Not only did the City fail to call as witnesses the two appraisers who had assertedly estimated the leasehold's value at zero, it has never disclosed their identities. The City, nevertheless, in its brief here faults the trial judge for not having confined the hearing to an examination of the City's appraisers. It also says that the court should not have permitted subpoenas to issue for the attendance of Mr. Beck and the City's other appraisers or heard any valuation evidence because such evidence was irrelevant on the issue of whether the City's two unidentified appraisers had valued the property at zero. The City having failed to reveal the names of the persons who purportedly appraised the leasehold

as having a zero value, the trial judge, of course, properly admitted other valuation evidence offered by Airportels in support of its petition to strike, including evidence of substantial value placed on the leasehold by other experts engaged by the City. In our opinion, the hearings were fairly conducted and the record contains clear, precise and indubitable evidence that the City's Declaration of Estimated Just Compensation in zero amount was not based on a judgment of the leasehold's value arrived at in good faith but that it was based on the City's continued insistence that the City had not condemned Airportels' leasehold. Therefore, the Declaration of Estimated Just Compensation, based not on the value of the leasehold but on the issue the City had irredeemably lost in court, was made in bad faith—as the able trial judge correctly decided.

The City also contends that the court below had no power or authority to enter into an inquiry with respect to the City's motives in making its Declaration of Estimated Just Compensation or, having found bad faith, to strike the Declaration, appoint an impartial appraiser and enter judgment on the amount of the impartial appraiser's valuation. We hold that it did.

Section 407 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-407, provides pertinently as follows:

(a) The condemnor, after the expiration of the time for filing preliminary objections by the condemnee to the declaration of taking, shall be entitled to possession or right of entry upon payment of, or a written offer to pay to the condemnee, the amount of just compensation as estimated by the condemnor. . . .

(b) If within sixty days from the filing of the declaration of taking, the condemnor has not

paid just compensation as provided in subsection (a) of this section, the condemnee may tender possession or right of entry in writing and the condemnor shall thereupon make payment of the just compensation due such condemnee as estimated by the condemnor. If the condemnor fails to make such payment the court, upon petition of the condemnee, may compel the condemnor to file a declaration of estimated just compensation or, if the condemnor fails or refuses to file such declaration, may at the cost of the condemnor appoint an impartial expert appraiser to estimate such just compensation. The court may, after hearing, enter judgment for the amount of the estimated just compensation.

The City contends that the purpose of Section 407 was fully served when it filed a Declaration of Estimated Just Compensation in compliance with the order of the court below; that the statute does not empower the court to inquire into the motives of a condemnor in filing the Declaration; and that the court's power to appoint an impartial expert appraiser and enter judgment is limited by the statute to the case of the condemnor which fails or refuses to file any declaration. We disagree with this thesis for several reasons.

First, we agree with the reasoning of Judge ROBERT W. WILLIAMS, JR. who patiently and ably heard and disposed of the matter below, who wrote:

Since 'just compensation' is an equitable concept, it would seem that any duty to estimate it be done in good faith. It would be a bizarre result if a condemnee's right to an impartial appraiser under Section 407(b) could be short-circuited by the condemnor declaring whatever capricious amount it desired as its estimate of just compensation. There must be circum-

stances in which a condemnor's declaration of estimated just compensation is so at odds with the economic realities as to constitute no estimate at all.

In the same vein, the Joint State Government Commission comments that the purpose of Section 407 was to prevent hardship to condemnees who under prior law could be required to relinquish possession of their real estate and to relocate before obtaining a final award of or judgment for compensation. This consideration surely applies as well to persons whose properties have been taken by actions of condemnors as to those whose properties have been taken formally —a fact for which this case provides striking proof.

Moreover, while the question of whether the exercise of the power of eminent domain is justified is not ordinarily judicial, it may be inquired into by courts in cases where fraud or palpable bad faith appears. *Schenck v. Pittsburg, supra; Winger v. Aires,* 371 Pa. 242, 89 A.2d 521 (1952); *Redevelopment Authority of the City of Erie v. Owners or Parties in Interest, supra.* If the power conferred on a municipality to take property by eminent domain may be inquired into and corrected by the courts where bad faith appears, surely a condemnor's conduct in feigned, not genuine, compliance with a statute designed to protect the condemnee, may also be inquired into and corrected.

The City seems to suggest by quoting a common pleas court opinion in another case, that Federal case law interpreting purportedly similar Federal statutes is to the effect that trial courts have no power to review the government's statements of just compensation, even where the government has acted in bad faith. Our examination of the authorities convinces us that the City's suggestion is incorrect in two respects. First, the Federal courts, rather than being in agree-

ment on the subject, are in conflict. The Court of Appeals for the Second Circuit (*United States v. 44.00 Acres of Land,* 234 F.2d 410 (1956)) and a New Jersey District Court (*United States v. 29.40 Acres of Land,* 131 F. Supp. 84 (1955)) have declared that trial judges may vacate declarations of taking where estimates of value have been made in bad faith. The Fifth Circuit (*In re United States,* 257 F.2d 844 (1958)) and the Ninth Circuit (*United States v. Cobb,* 328 F.2d 115 (1964)) have held that trial judges are without power to set aside the government's declaration of taking on any ground, including bad faith in estimating compensation. Second, possibly in response to the harsh rule of the Fifth and Ninth Circuits, Congress has enacted the Uniform Relocation Assistance and Real Property Policies Act of 1970, 42 U.S.C.A. §4601 et seq., supplementing and modifying the federal Declaration of Taking Act, 40 U.S.C.A. §§258a-258e, which requires the head of the acquiring agency to establish just compensation in an amount not less than the agency's approved appraisal of fair market value, to invite the owner to accompany its appraiser during his inspection of the property and to provide the owner with a written statement and summary of the basis for the amount of estimated just compensation.

A better comparison with the Pennsylvania Eminent Domain Code is afforded by the Georgia statute described by the Court of Appeals of that State in *State Highway Department v. Respess,* 111 Ga. App. 787, 143 S.E. 2d 434 (1965), where that court held that a declaration of taking might be set aside on conclusive proof that the condemnor acted in bad faith in making a required statement of the sum of money estimated to be just compensation.

The City seems also to argue that Section 407 has no application to a proceeding, such as this, com-

menced not by a declaration of taking under Section 402, but by a condemnee's petition for the appointment of viewers under Section 502(e) because Section 407 and other sections within Article IV of the Code entitled "Procedure to Condemn" bear only on condemnations commenced by a declaration of taking. We have refused to adopt such a narrow view of the Code. In *Commonwealth's Crosstown Expressway Appeal*, 3 Pa. Commonwealth Ct. 1, 281 A.2d 909 (1971), we sanctioned the use of Section 406 preliminary objections to test the sufficiency of a petition for the appointment of viewers filed by an owner alleging a de facto taking, although the Code did not specifically so provide. *See Jacobs v. Nether Providence Township*, 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972). That action and the action we here approve of applying Subsection 407(b) procedures for obtaining declarations of estimated just compensation to Section 502 (e) cases, were presaged by Judge BOWMAN's observation in the case of *Hazleton Redevelopment Authority v. Hudock*, 2 Pa. Commonwealth Ct. 670, 674-75, 281 A.2d 914, 917 (1971), that:

> The developing expansion of the theory of constructive 'taking'—sometimes referred to as inverse condemnation and more recently in the case law as a *de facto* 'taking'—has been responsive to the reality that activities carried on incident to massive, complex and time consuming programs launched by government to solve some of the acute problems that beset our society *may* so substantially interfere with one's use and enjoyment of his property as to constitute a compensable injury in a constitutional sense or as being within applicable statutory law, even though the power of eminent domain has not been formally exercised against the

property in question and there has been no physical intrusion of it. (Emphasis in original.)

In order that there be no misunderstanding of our holding, we observe that the fact that the condemnor's estimate of just compensation is in an amount greatly less than the condemnee's expectations, or that it is less than the valuations of the condemnee's appraisers, or that it is less than the amount the hearing judge believes it should have been, either singly or in combination, are not reasons for setting aside the condemnor's declaration. Only fraud or palpable bad faith in making the declaration, described by clear averments of facts in the condemnee's pleading and thereafter proved by clear, precise and indubitable evidence will justify the employment by the trial court of the powers we now hold they possess to set aside the condemnor's declaration, to appoint an impartial appraiser and to enter judgment in favor of the condemnee.

Two additional matters: First, the hearing judge entered judgment in the amount of the impartial appraiser's estimate of $4,400,000, plus interest at the rate of 6% per annum from October 1, 1975 to the date of its order, January 27, 1978. We believe that the entry of judgment for interest for delay was inappropriate. Section 611 of the Code, 26 P.S. §1-611, provides that compensation for delay shall not be included as part of the award or verdict but shall at the time of payment of the award or judgment be calculated and then added to the award or judgment. Accordingly, we will direct that the judgment be modified.

Second, we refuse Airportels' motion that we award it costs and damages under Pa. R.A.P. 2744 on the ground that the City's appeal was frivolous.

The judgment below is modified by the deletion therefrom of interest as compensation for delay; and as so modified is affirmed.

422

## ORDER

AND Now, this 12th day of February, 1979, the judgment below is modified by the deletion therefrom of interest as compensation for delay; and as so modified is affirmed.