# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sixto Rolando Trinidad a/k/a : 
Sixto Trinidad Rodriguez and : 
Raquel Correa Garcia h/w : 
  : 
             v. : No. 1282 C.D. 2020
  : Submitted: March 7, 2022
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
             Appellant : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge


OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED: March 30, 2022


The Commonwealth of Pennsylvania, Department of Transportation (DOT) appeals from the November 2, 2020 Order of the Court of Common Pleas of Philadelphia County (common pleas), which dismissed DOT's Motion for a Writ of Possession (Motion) without prejudice, citing a federal order temporarily halting residential evictions. The Motion sought possession of condemned property previously owned by Appellee Sixto Rolando Trinidad a/k/a Sixto Trinidad Rodriguez and Raquel Correa Garcia h/w (Condemnees). In common pleas' opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), common pleas explained that the Order was not final and did not satisfy any exception for collateral orders. On appeal, DOT argues that the Order is an appealable collateral order under Pennsylvania Rule of Appellate Procedure 313, Pa.R.A.P. 313. DOT further asserts that common pleas erred in dismissing the

Motion because it satisfied the requirements under the Eminent Domain Code[1] for obtaining possession of a condemned property, it paid the estimated just compensation to Condemnees, and the cited federal order halting residential evictions was inapplicable because the condemned property was commercial, not residential. Because we determine that the Order is a final appealable order and that common pleas erred in dismissing the Motion where DOT paid the estimated just compensation and the federal order halting residential eviction was inapplicable, we reverse.

## I.     BACKGROUND

The following facts are not in dispute. On February 19, 2019, DOT filed a Declaration of Taking under Section 302(a)(1) of the Eminent Domain Code, 26 Pa.C.S. § 302(a)(1), condemning a commercial property owned by Condemnees and located at 4226-4238 North 5th Street, Philadelphia, Pennsylvania (the Property). Condemnees used the Property for commercial purposes as a tire shop. Notice of the condemnation was served on Condemnees on March 27, 2019. Condemnees did not file preliminary objections to the Declaration of Taking but did file a Petition for Appointment of Viewers (Petition) to ascertain just compensation for the taking of the Property. Common pleas granted the Petition on September 11, 2019, and appointed a Board of Viewers (Board).

On August 21, 2019, DOT filed a Petition to Deposit Estimated Just Compensation "to assure [DOT's] possession of the condemned property . . . under Section 307 of the Eminent Domain Code," 26 Pa.C.S. § 307. (Original Record (O.R.) Item 7, Reproduced Record (R.R.) at 43a-44a.) Common pleas issued an order on September 12, 2019, permitting DOT to deposit the estimated amount of

___

[1] 26 Pa.C.S. §§ 101-1106.

just compensation and prorated taxes, totaling $151,867.67, into an interest-bearing account. Condemnees then filed a Petition to Release the Estimated Just Compensation, which common pleas granted on December 19, 2019, ordering the release of the $151,867.67 directly to Condemnees. While preparing for the Board hearing, DOT obtained an updated appraisal, which resulted in an increased appraised value of $194,000 for the Property. As such, DOT issued Condemnees a check for $42,132.33, the difference between the updated appraised value and the original value of $151,867.67.

On August 24, 2020, DOT filed the Motion with common pleas, asserting that, despite not filing preliminary objections and the payment and release of the estimated just compensation, Condemnees had not vacated the Property. DOT sought, pursuant to Section 307(a) of the Eminent Domain Code, for common pleas to quiet title and issue a writ of possession against Condemnees. Condemnees filed a response opposing the Motion, arguing DOT had not fully compensated them for the condemnation of the Property and that they were waiting for the Board's decision before vacating. While the Motion was pending, on August 17, 2020, the Board held a hearing on the matter, later determining in its subsequent October 5, 2020 report that damages amounted to $230,000. DOT then appealed the Board's decision.

Common pleas entered the Order dismissing the Motion without prejudice on November 2, 2020. In the Order, common pleas cited to "85 Fed. Reg. 55292 (Sept. 4, 2020)," the United States Department of Health and Human Services, Centers for Disease Control and Prevention's Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19 (Federal Residential Eviction Halt), which temporarily halted residential evictions from September 4, 2020, through December

3

31, 2020. (O.R. Item 18, R.R. at 91a n.1.) DOT filed a Motion for Reconsideration, which common pleas denied. DOT appealed to this Court.[2]

At common pleas' direction, DOT filed a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b). In its 1925(a) opinion, common pleas explained that the "Order was not a final, appealable [o]rder and did not meet any of the exceptions for interlocutory appeals under Pa.R.A.P. 313." (1925(a) Opinion (Op.) at 2.) Noting that DOT "ha[d] not lost any of its rights and the Motion [] was dismissed without prejudice so as to be refiled at an appropriate time," common pleas requested that this Court remand the matter "for a proper adjudication on the Motion." (*Id.*)

## II.     DISCUSSION

### A. *Parties' Arguments*

On appeal, DOT argues that common pleas' Order denying the Motion is an appealable, collateral order. DOT maintains that the November 2, 2020 Order is immediately appealable because the right to possession is an independent issue that is "separable [from] and collateral to the main cause of action" that involves Condemnees' claim for full compensation, and the right to possession is a right too important to be denied immediate review because DOT's highway project, which is contingent on possession of the Property, will be delayed thereby affecting the safety of the public. (DOT's Brief (Br.) at 9-11.) DOT points out that this "project involves contracts and schedules with third parties" and, "[w]ithout immediate possession, []DOT is at risk of violating [those] contracts" and "significantly delay[ing] the

---

[2] "Our scope of review in an eminent domain case is limited to whether the trial court abused its discretion, an error of law was committed, or the findings of fact are supported by substantial evidence." *In re Condemnation of 30.60 Acres of Land*, 572 A.2d 242, 244 n.4 (Pa. Cmwlth. 1990).

project." (*Id.* at 12.) Given that it could take years for DOT's appeal of the Board's decision concerning the full compensation to resolve, and as DOT will be unable to "recoup any losses from delays and increased costs," DOT argues that any loss resulting from the delay is irreparable and, therefore, common pleas' Order is an immediately appealable collateral order. (*Id.* at 11-12.)

On the merits, DOT asserts that it is entitled to possession of the Property pursuant to Sections 302(a) and 307 of the Eminent Domain Code, 26 Pa.C.S. §§ 302(a), 307, and common pleas erred in denying the Motion. In particular, because it has already paid Condemnees "the amount of just compensation as estimated by" DOT, and there have been no allegations or evidence that DOT "acted with fraud or palpable bad faith in making payment of or offering estimated just compensation," which is all that is required for obtaining possession, DOT submits that the Order should be reversed. (*Id.* at 13-14 (quoting 26 Pa.C.S. § 307(a)(1)(i)) (citing *Redevelopment Auth. of Wilkes-Barre v. Serafin*, 404 A.2d 440, 442 (Pa. Cmwlth. 1979)).) Finally, DOT maintains common pleas erred in relying on the Federal Residential Eviction Halt here because the Property is commercial, not residential. Accordingly, DOT requests this Court to reverse common pleas' Order denying the Motion.

In response, Condemnees maintain that common pleas properly denied the Motion because they have not been paid full compensation for the value of the Property and common pleas' Order is supported by substantial evidence and the law. Given that DOT has appealed the Board's decision, Condemnees submit that common pleas did not err in dismissing the Motion without prejudice, and that DOT may file another motion for writ of possession if it so chooses.

5

*B. Analysis*

    1. <u>Appealability of the Order</u>

Common pleas determined that the Order is not a final order or an appealable, collateral order. The general rule is that "an appellate court's jurisdiction extends only to review of final orders." *Rae v. Pa. Funeral Dirs. Ass'n*, 977 A.2d 1121, 1124-25 (Pa. 2009) (citing Pennsylvania Rule of Appellate Procedure 341(a), Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order.")). Final orders include those that: (1) "dispose[] of all claims and of all parties," (2) are entered as final orders, or (3) are orders defined as final as to petitions under the Post Conviction Relief Act.[3] Pa.R.A.P. 341(b), (c), (f).

Conversely, a collateral order is defined as an order that is (1) "separable from and collateral to the main cause of action where [(2)] the right involved is too important to be denied review and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pennsylvania Rule of Appellate Procedure 313(b), Pa.R.A.P. 313(b). The collateral order doctrine thus permits appellate review "of a narrow class of orders which address claims of right 'separable from, and collateral to, rights asserted in the action, too important to be denied review[,] and too independent of the cause [of action] itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Rae*, 977 A.2d at 1125 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)) (second alteration in original). Our Supreme Court has construed the collateral order doctrine narrowly in order to avoid piecemeal litigation and the consequent protraction of litigation. *Rae*, 977 A.2d at 1129 (citing *Sullivan v. Philadelphia*, 107 A.2d 854, 855 (Pa. 1954)). In reviewing whether an

---

[3] 42 Pa.C.S. §§ 9542-9546.

6

order is immediately appealable under the collateral order doctrine, the "three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." *Rae*, 977 A.2d at 1130. Accordingly, we turn to the three prongs of the collateral order doctrine: (1) separability; (2) importance; and (3) irreparable loss.

        a. Separability

This Court has stated that "[a]n order is separable if it does not affect the merits of the main cause of action." *Pittsburgh Water & Sewer Auth. v. Gladstone*, 999 A.2d 1248, 1254 (Pa. Cmwlth. 2010) (citation omitted). "As to separability, [our Supreme] Court has adopted a practical analysis recognizing that some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable." *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 433 (Pa. 2006). Accordingly,

> [s]o long as the issue is conceptually distinct from the merits, that is, where, even if practically intertwined with the merits, it nonetheless raises a question that is significantly different from the questions underlying the party's claim on the merits, it is separable from the main cause of action.

*Commonwealth v. Williams*, 86 A.3d 771, 791 (Pa. 2014) (alterations, quotations, and citations omitted) (alteration added).

Here, the order before this Court is common pleas' Order denying DOT's Motion that sought possession of the Property. DOT asserts that this order is separate from the ongoing litigation concerning DOT's appeal from the Board's decision, which concerns the value of full compensation for the taking of the Property. Section 307(a)(1)(i) of the Eminent Domain Code provides:

> The condemnor, after the expiration of the time for filing preliminary objections by the condemnee to the declaration of taking, **shall be entitled to possession or right of entry upon payment** of or a written offer to pay to the condemnee [of] **the amount of just compensation as estimated by the condemnor.**

26 Pa.C.S. § 307(a)(1)(i) (emphasis added). As Section 307(a)(1)(i) plainly states, the right to possession of a condemned property is an issue concerning only whether "the amount of **just compensation as estimated by the condemnor**" has been paid or offered to be paid in writing to the condemnee. *Id.* (emphasis added). Here, there is no dispute that the amount of just compensation as estimated by DOT has been paid to Condemnees. Thus, under the Eminent Domain Code, the issue of the right to possession remains "significantly different from the questions underlying" the issue of full compensation, *Williams*, 86 A.3d at 781. Accordingly, for the purpose of the collateral order doctrine, we are satisfied that the issue of the right to possession "does not affect the merits of the main cause of action" and, therefore, is separable. *Gladstone*, 999 A.2d at 1254.

  b. Importance

Turning to the second prong of the collateral order doctrine, the right involved must be too important to be denied review. Pa.R.A.P. 313(b). "[I]t is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Geniviva v. Frisk*, 725 A.2d 1209, 1213-14 (Pa. 1999). Specifically, "before concluding an issue satisfies the test's second prong . . . [,] we consider whether the right is important compared to the 'costs of piecemeal litigation' and the 'efficiency interests sought to be advanced by adherence to the final judgment rule.'" *Rae*, 977 A.2d at 1129 (quoting *Ben v. Schwartz*, 729 A.2d 547, 552 (Pa. 1999)).

8

We recognize that there is a relationship between granting possession of condemned property to the condemnors where the condemnors have condemned a property, initiated statutory taking procedures, and satisfied Section 307(a)(1)(i)'s requirements for possession and the longstanding public policy favoring eminent domain taking for public use. Our Supreme Court has explained:

> The theory of eminent domain comes from the absolute right of the sovereign to take property for public use. All title interests must be included in the taking. It would be unthinkable that outstanding interests or rights in the land should remain in others after condemnation; to permit such interests to remain would materially interfere with the completion of the purposes for which the government, or those acting for it or in [it]s right, have taken the property through eminent domain. It is therefore a matter of public policy that condemnation operates against all interests directly connected with the title of land, including all unrecorded equities or hidden interests indirectly connected with or growing out of such titles.

*Briegel v. Briegel*, 160 A. 581, 582 (Pa. 1931). Further, there is a separate public policy against "restrain[ing] one in the use or control of property in which he alone is interested." *In re Decker's Estate*, 46 A.2d 218, 219 (Pa. 1946). Considering the interrelated policy issues between the government's absolute right to take property for public use, a condemnee's right to just compensation for that taking and subsequent divestment of all interests in the property thereafter, and a condemnor's right to make use of property for public use to which it has established a legal right to possession thereof, we agree with DOT that this issue "involve[s] rights deeply rooted in public policy going beyond the particular litigation at hand." *Geniviva*, 725 A.2d at 1213-14. As compared to the "costs of piecemeal litigation" and "the efficiency interests sought to be advanced by adherence to the final judgment rule," *Rae*, 977 A.2d at 1129, this Court is satisfied that these policy considerations are likewise important and justify immediate appellate review where DOT has

9

established its right to possession and alleges that it has been effectively restrained in the use and control of the Property to the detriment of the public due to common pleas' Order denying its Motion. Accordingly, the issue raised in the Order meets the importance prong of the collateral order doctrine.

### c. Irreparable Loss

"The remaining prong of the collateral order doctrine requires us to consider whether . . . if the review is postponed until final judgment in the case, the claim will be irreparably lost." *Ben*, 729 A.2d at 552. In examining this prong, we ask "whether a right is 'adequately vindicable' or 'effectively reviewable.'" *Geniviva*, 725 A.2d at 1213 (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878-79 (1994)). In sum, we must determine whether the lower court's ruling "cannot be undone." *Ben*, 729 A.2d at 552. We have explained:

> This question cannot be answered without a judgment about the value interests that would be lost through rigorous application of a final judgment requirement. For instance, the substantial cost a party would incur in defending a claim may equate to an irreparable loss of a right to avoid the burden entirely.

*Com. ex rel. Kane v. Philip Morris, Inc.*, 128 A.3d 334, 345 (Pa. Cmwlth. 2015) (quotations and citations omitted). In *Pridgen*, the Supreme Court held that an order denying summary judgment in a case concerning statutory claims under the General Aviation Revitalization Act of 1994 (GARA)[4] satisfied the irreparable injury prong because the appellants, comprised of aviation manufacturers sued in relation to a fatal aviation accident, established that they would "incur in defending th[at] complex litigation at trial on the merits . . . a sufficient loss," particularly where the

---

[4] 49 U.S.C. §§ 40101-40130.

10

public interest is involved. 905 A.2d at 433. Because the United States Congress had created an interest in freedom from tort claims under GARA, this interest weighed in favor of allowing an immediate appeal in order to avoid such sufficient losses that would incur should the appellants be forced to try a case properly disposed of on summary judgment. Thus, in analyzing this prong, our Supreme Court considered the interest at stake, the ultimate and proper legal result of the merits issue, the costs that the party would incur if an appeal was not immediately available, and the ability of the party to recoup those costs in that event. *Id.* at 433-34.

If we were to determine that the Order dismissing the Motion is not immediately appealable, the practical effect would require DOT to wait to obtain possession of the Property until the culmination of its appeal from the Board's decision concerning the proper amount of full compensation for the condemnation. DOT asserts that absent the ability to take control of the Property, its highway project will be continually delayed, resulting in the violation of contracts with third parties and no avenue through which it could pursue any claims to recoup for any such violations or costs from delay. Additionally, DOT alleges harm to the traveling public as a result. Considering that DOT has established its legal right to possession discussed further below, and that if DOT is required to litigate its appeal of the Board's decision concerning the full value of compensation before gaining possession of the Property, it and the public would suffer losses due to waiting for the ultimate disposition in that litigation, we are satisfied that the substantial costs that DOT would incur here would not be "adequately vindicable," *Geniviva*, 725 A.2d at 1213, and, effectively, "c[ould] not be undone," *Ben*, 729 A.2d at 552, if review were delayed. Similar to incurring a loss for defending a meritless claim at

11

trial, *Pridgen*, 905 A.2d at 433, DOT would incur losses due to delays and violations of contracts with third parties if it is forced to litigate its appeal from the Board's decision prior to taking possession of the Property. Accordingly, the Order satisfies the irreparable loss prong.

Finally, we are satisfied that allowing an appeal from common pleas' Order denying the Motion is consistent with our concern not only for judicial economy but for "judicial **accuracy**." *Rae*, 977 A.2d at 1130 (emphasis in original). "[A]s a general rule, an appellate court is more likely to decide a question correctly after judgment, where it may consider the claim in the context of a complete adjudication and a fully developed record." *Id.* (citation omitted). While this maxim typically holds true for most appeals, the one before us appears to be an exception to such rule. The remaining litigation between the parties concerning DOT's appeal from the Board's decision on the amount of full compensation that is owed has no bearing on the issue of whether DOT is currently entitled to possession of the Property, and there is nothing that the record of that appeal could supplement this Court in deciding the issue before us. Accordingly, in this narrow instance, the Order meets the prongs for the collateral order doctrine and is immediately appealable as of right.

2. Merits

Having determined that we have jurisdiction to hear this appeal, we turn to its merits. DOT asserts that common pleas erred in denying the Motion because DOT paid Condemnees $194,000 in estimated just compensation, there were no preliminary objections filed, and there were no allegations or evidence of fraud or bad faith. We agree. Section 307(a)(1)(i) of the Eminent Domain Code provides:

> The condemnor, after the expiration of the time for filing preliminary objections by the condemnee to the declaration of taking, **shall be**

12

**entitled to possession or right of entry upon payment** of or a written offer to pay **to the condemnee [of] the amount of just compensation as estimated by the condemnor.**

26 Pa.C.S. § 307(a)(1)(i) (emphasis added). Concerning the authority of a trial court to set aside a condemnor's declaration of estimated just compensation, this Court has explained:

> Only fraud or palpable bad faith in making the declaration, described by clear averments of facts in the condemnee's pleading and thereafter proved by clear, precise[,] and indubitable evidence will justify the employment by the trial court of the powers we now hold they possess to set aside the condemnor's declaration, to appoint an impartial appraiser[,] and to enter judgment in favor of the condemnee.

*In re Condemnation by City of Phila. of Leasehold of Airportels, Inc.*, 398 A.2d 224, 229 (Pa. Cmwlth. 1979). In *Airportels*, a condemnee tendered possession of a condemned property and petitioned for an order compelling the condemnor to pay just compensation. The condemnor, however, estimated the just compensation at zero dollars. The condemnee challenged a condemnor's estimation of just compensation because it was far less than the condemnee's expectations and the valuations by condemnee's appraisers. We explained that the amount determined to be a condemnor's estimation of just compensation is only reviewable by the trial court where there are such allegations and evidence of fraud or bad faith. Applying this approach to a matter involving a writ of possession, in *Serafin*, we explained that where the condemnee alleges such facts and provides evidence thereto, "then and only then should the trial court refuse to issue the writ of possession." 404 A.2d at 442. Accordingly, absent allegations and proof of fraud or bad faith, a trial court errs in denying a writ of possession where a condemnor's estimated just compensation has been paid to and accepted by a condemnee.

13

It is undisputed that Condemnees did not file preliminary objections to the Declaration of Taking. Further, it is undisputed that DOT paid, and that Condemnees accepted, "the amount of just compensation **as estimated** by [DOT]." 26 Pa.C.S. § 307(a)(1)(i) (emphasis added); (O.R. Item 7; R.R. at 43a-55a). Indeed, the record shows, and Condemnees do not dispute, that DOT paid them the initial $151,867.67 in estimated just compensation and then paid an additional amount, for a total of $194,000, following an additional appraisal. Nonetheless, Condemnees maintain that DOT is not entitled to possession of the property until **full** compensation is paid, as determined by the Board. However, this position is not supported by the plain language of Section 307(a)(1)(i), which conditions the right of possession only on the payment of "the amount of **just compensation as estimated by the condemnor**." 26 Pa.C.S. § 307(a)(1)(i) (emphasis added). Moreover, Condemnees have made no allegations of fraud or bad faith in the calculation of that just compensation that would permit common pleas to deny the Motion. *Airportels*, 398 A.2d at 229; *Serafin*, 404 A.2d at 442. Accordingly, because DOT paid, and Condemnees accepted, the amount of just compensation as estimated by DOT, common pleas lacked authority to deny the Motion.

Further, we agree with DOT that common pleas erred in referencing the Federal Residential Eviction Halt to justify dismissing the Motion, as it only pertained to residential evictions. 85 Fed. Reg. 55292 ("The Centers for Disease Control and Prevention . . . temporarily halt **residential** evictions.") (emphasis added). The Property here, however, was not residential but commercial, with Condemnees operating a tire store thereon. As such, the Federal Residential Eviction Halt did not apply to the Property. Accordingly, common pleas erred in dismissing the Motion.

14

### III. CONCLUSION

Based on our determinations that the Order was an appealable, collateral order, that DOT established its right to possession of the Property by paying Condemnees the estimated just compensation for the condemnation, and that the Federal Residential Eviction Halt was inapplicable to the commercial Property, common pleas erred in dismissing the Motion. Accordingly, we reverse.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sixto Rolando Trinidad a/k/a :
Sixto Trinidad Rodriguez and :
Raquel Correa Garcia h/w :
 :
   v. : No. 1282 C.D. 2020
 :
Commonwealth of Pennsylvania, :
Department of Transportation, :
     Appellant :

# **O R D E R**

**NOW**, March 30, 2022, the November 2, 2020 Order of the Court of Common Pleas of Philadelphia County (common pleas), dismissing the Department of Transportation's Motion for Writ of Possession, is **REVERSED**, and this matter is **REMANDED** to common pleas to issue the Writ of Possession to the Department of Transportation in accordance with the above-captioned opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** President Judge